UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE H.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-5578 RAJ

**ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting several medical opinions and failing to account for her neuropathy, and requests the Court remand for further administrative proceedings. Dkt. 9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 56 years old, has a high school education, and has worked as a claim analyst/examiner. Dkt. 7, Administrative Record (AR) 25. Plaintiff applied for benefits in March 2015, alleging disability as of March 2010. AR 54. Plaintiff's applications were denied initially and on reconsideration. AR 53, 84. After the ALJ conducted a hearing in April 2017,

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

the ALJ issued a decision finding Plaintiff not disabled. AR 35, 15-27.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that, during the relevant period from the March 2010 alleged onset date to the September 2015 date last insured:

**Step one:** Plaintiff did not engage in substantial gainful activity.

**Step two:** Plaintiff had the following severe impairments: diabetes mellitus with diabetic neuropathy, obesity, and osteoarthritis of the neck.

**Step three:** These impairments did not meet or equal the severity of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff could perform light work, further limited to standing and walking two hours of an eight-hour workday. She could frequently reach overhead. She could occasionally balance, stoop, and climb ramps, stairs, ladders, ropes, and scaffolds. She could not kneel, crouch, crawl, or work around heights, hazards, extreme temperatures, fumes, odors, and dusts. She was limited to a work environment with a noise level of 3 or below.

**Step four:** Plaintiff could perform past relevant work as a claims analyst/examiner.

**Step five:** In the alternative, as there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed, she was not disabled.

AR 17-27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.    W. Daniel Davenport, M.D.**

An ALJ may only reject the contradicted opinion of an examining doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

Dr. Davenport examined Plaintiff in June 2015 and reviewed some of her records. AR 676. In addition to lifting, postural, and environmental limitations that the ALJ accepted, Dr. Davenport opined that Plaintiff was limited to "less than 2 hours" standing and walking, "[a]t least 2 hours" sitting, and only occasional reaching, handling, fingering, and feeling. AR 680.

The ALJ rejected these limitations because they were inconsistent with the record and Dr. Davenport's own findings. AR 23.

### 1. The ALJ Erred by Discounting Dr. Davenport's Opinions as Inconsistent with Findings

The ALJ found that Dr. Davenport's findings did not support his opinions, and thus he must have "relied heavily on the subjective reports of the claimant in forming his opinion." AR 23. The ALJ did not identify any subjective statements by Plaintiff that influenced Dr. Davenport's opinions. As far as objective findings, Dr. Davenport observed a wide range of abnormalities. He found reduced strength in grip and in flexion/extension of shoulders, arms, wrists, hips, knees, and ankles. AR 678. Plaintiff's neck range of motion was reduced and she had decreased or absent sensation in hands, feet, and lower legs. AR 679. Plaintiff also had pain with squatting, knee tenderness, reduced lower leg reflexes, and abdominal tenderness. AR 678-79. The ALJ dismissed the significance of these findings on the grounds that Dr. Davenport also observed that Plaintiff had a "normal gait" and was "able to … get up and down from a chair, and maneuver on the exam table." AR 678; AR 23. Plaintiff argues that ALJ improperly substituted his own judgment for the doctor's. Dkt. 9 at 5. The Court agrees. A thorough examination will nearly always produce a mix of normal and abnormal findings. Dr. Davenport documented extensive physical abnormalities. Simply identifying a few normal findings does not explain why the ALJ's interpretation of the results is correct and the doctor's is incorrect. *See Reddick*, 157 F.3d at 725. The Court concludes the ALJ erred by discounting Dr. Davenport's opinions based on inconsistency with his own findings.

### 2. The ALJ Erred by Discounting Dr. Davenport's Opinions as Inconsistent with the Record

The ALJ's only citation to the record noted that Plaintiff did not check the box for

"Sitting" when asked what activities her impairments affect. AR 219. Plaintiff's ability to sit does not contradict Dr. Davenport's opinion that she cannot sit all day long. And nothing else in the record stands in obvious contradiction to Dr. Davenport's opinions. The Court concludes the ALJ erred by discounting Dr. Davenport's opinions based on inconsistency with the record.

### 3. The Commissioner's Post Hoc Argument is Rejected

The Commissioner argues that the ALJ also discounted Dr. Davenport's opinions because "he had only seen her one time." Dkt. 10 at 11. This is not only an improper *post hoc* argument upon which the Court cannot rely, but a legally insufficient reason. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995) (court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"); 20 C.F.R. § 404.1527(c) (ALJ "will evaluate every medical opinion we receive," including opinions from non-treating doctors).

The Court concludes the ALJ erred by rejecting Dr. Davenport's opinions without a specific and legitimate reason.

### 4. The Error was Harmful

The vocational expert testified that a person who could only stand, walk, or sit for a total of four hours per day, reclining or elevating her legs the remaining four hours, would not be able to perform any jobs available in significant numbers in the national economy. AR 48-49. In addition, a person limited to occasional handling and fingering could not perform Plaintiff's past work as a claims analyst. AR 50. This testimony indicates that, if the ALJ had properly evaluated Dr. Davenport's opinions and incorporated some or all of the rejected limitations, the outcome of the disability determination may have been different. *Cf. Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination").

On remand, the ALJ should reevaluate Dr. Davenport's opinions.

**B.     The ALJ Should Also Reevaluate Plaintiff's Neuropathy**

Plaintiff testified that neuropathy in her hands causes pain, numbness, and cramping, makes her drop things, and makes her writing blurry.  AR 39-40.  Dr. Davenport found "decreased pinprick and soft touch distally" in Plaintiff's hands.  AR 679.  He concluded that Plaintiff "can occasionally do reaching, handling, fingering, and feeling limited by her diabetic neuropathy of the hands and her ability to stand and sit."  AR 680.

The Commissioner argues that the ALJ properly discounted Plaintiff's testimony.  Dkt. 10 at 4-9.  However, the record also contains Dr. Davenport's observations and opinions concerning hand neuropathy and hand function.  The ALJ must reevaluate Dr. Davenport's opinions on remand, and this reevaluation may alter the balance of evidence.  On remand, the ALJ should reconsider the evidence related to hand neuropathy.

**C.     The ALJ Did Not Err in Evaluating the State Agency Psychologists' Opinions**

During the initial consideration of Plaintiff's application, nonexamining state agency psychologist Patricia Kraft, Ph.D., reviewed Plaintiff's records and opined that Plaintiff was "[m]oderately limited" in the abilities to "maintain attention and concentration for extended periods[,]" to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances[,]" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  AR 64.  Dr. Kraft further explained that the "pace at which work is performed is likely to vary w[ith] concentration…."  AR 64.  On reconsideration of Plaintiff's application, Anita Peterson, Ph.D., concurred.  AR 80.

The ALJ gave only "some weight" to the opinions of Dr. Kraft and Dr. Peterson,

discounting them in favor of the opinion of examining doctor Tom Dooley, Psy.D., that Plaintiff "appears to be a good to fair candidate for employment, once her physical issues are mediated." AR 24; AR 674. An examining physician's opinion is generally entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

Plaintiff argues that the ALJ erred by "fail[ing] to acknowledge" that the state agency doctors considered her affective disorder "severe." Dkt. 9 at 9. But Plaintiff does not allege any error at step two, which in any case would be harmless because step two was decided in her favor. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Simply labeling an impairment severe does not explain its functional significance.

Plaintiff next contends that the ALJ failed to give reasons for preferring Dr. Dooley's opinions. Dkt. 9 at 9. However, not only do Social Security regulations give preference to examining over nonexamining doctors' opinions, but the ALJ provided multiple reasons to prefer Dr. Dooley's opinions. *See* 20 C.F.R. § 404.1527(c)(1); AR 24 (Dr. Dooley's opinions consistent with objective findings and with Plaintiff's activities).

Finally, Plaintiff argues that the state agency doctors' opinions may not conflict with Dr. Dooley's, because Dr. Dooley may have meant that Plaintiff could work but still had mental limitations. Regardless of whether Plaintiff's interpretation was rational, the ALJ's interpretation that Dr. Dooley meant that Plaintiff did not have mental limitations was rational

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 7

and thus the Court must uphold it.  *Burch*, 400 F.3d at 680-81.  The Court concludes the ALJ did not err by discounting the state agency psychologists' opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Davenport's opinions, reassess the evidence on hand neuropathy, reconsider the RFC, and proceed to steps four and five as needed.

DATED this 18th day of March, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge